1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

LINNEA D. N.,

              Plaintiff,

    v.

COMMISSIONER OF SOCIAL
SECURITY,

              Defendant.

CASE NO. 3:22-CV-5321-DWC

ORDER REVERSING AND
REMANDING FOR FURTHER
PROCEEDINGS

Plaintiff filed this action, pursuant to 42 U.S.C. § 405(g), for judicial review of the denial of her applications for disability insurance benefits and supplemental security income. Pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and Local Rule MJR 13, the parties have consented to proceed before the undersigned.

## BACKGROUND

On February 14, 2019, Plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits, alleging a disability onset date of February 9, 2018 due to easily triggered headaches and exacerbated pain symptoms. Administrative Record (AR) 20, 44-46, 49, 57-58, 268. Her claim was denied initially and on reconsideration, after which

1    Plaintiff filed a written request for a hearing. AR 16. On March 30, 2021 Plaintiff, who was

2    represented by counsel, testified telephonically at a hearing conducted by an Administrative Law

3    Judge (ALJ). AR 35-77. Plaintiff appealed the ALJ's denial of her claim to the Appeals Council,

4    which declined review on March 17, 2022 (AR 1-7), rendering the ALJ's decision the final

5    decision of the Commissioner. 20 C.F.R. §§ 404.981, 416.1481.

6                                              STANDARD

7            Pursuant to 42 U.S.C. § 405(g) this Court may set aside the Commissioner's denial of

8    social security benefits if the ALJ's findings are based on legal error or not supported by

9    substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th

10   Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). However, the

11   Commissioner's decision must be affirmed if it is supported by substantial evidence and free of

12   harmful legal error. 42 U.S.C. § 405(g); *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir.

13   2008).

14           Substantial evidence "is a highly deferential standard of review." *Valentine v. Comm'r of

15   Soc. Sec. Admin.,* 574 F.3d 685, 690 (9th Cir. 2009). The U.S. Supreme Court describes it as

16   "more than a mere scintilla." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019). "It means—and

17   means only—such relevant evidence as a reasonable mind might accept as adequate to support a

18   conclusion." *Id*. (internal quotations omitted).

19                                          THE ALJ's FINDINGS

20           The ALJ found Plaintiff suffered from the severe impairments of migraines, cervico-

21   occipital neuralgia, asthma, and hypothyroidism. AR 18.

22           The ALJ determined that Plaintiff had a residual functional capacity (RFC) to perform

23   light work as defined in 20 CFR 404.1567(b) with the following additional limitations: she can

24

occasionally climb ramps, stairs, ladders, ropes, and scaffolds and can occasionally stoop, kneel, crouch, and crawl; she can tolerate frequent exposure to vibration and loud noise; and she can tolerate occasional exposure to pulmonary irritants, such as fumes, odors, dusts, gases, and poor ventilation. AR 19.

At step five of the sequential evaluation the ALJ determined that when considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that she remains capable of performing, such as Parking Lot Attendant, Mail Clerk/Mailroom Sorter, Sorter of Agricultural Produce, Document Preparer, Final Assembler, and Cashier II. AR 23-24.

## DISCUSSION

Plaintiff claims the ALJ erred in his assessment of her subjective reporting as well as his assessment of the two medical sources Plaintiff asked to advocate for her disability application. Dkt. 8 at 2, 11. The Court concurs, in part, and remands this case for further proceedings for the reasons that follow.

### I.   The ALJ's assessment of Plaintiff's subjective reporting was legally insufficient.

Plaintiff argues the ALJ failed to point to clear and convincing reasons to reject her subjective reporting because the ALJ: (1) used language suggesting the ALJ decided her RFC before analyzing the medical evidence and subjective symptom testimony; (2) noted that Plaintiff once received Botox injections for migraine treatment that provided "good relief for her headaches"; and, (3) the ALJ neglected to include Plaintiff's explanation about the manner in which she engages in her activities of daily living. Dkt. 8 at 11-15.

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996) (citation omitted).

1  The ALJ "must identify what testimony is not credible and what evidence undermines the

2  claimant's complaints." *Id*.; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Unless

3  affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the

4  claimant's testimony must be "clear and convincing." *Lester*, 81 F.2d at 834. If substantial

5  evidence supports the ALJ's assessment of a claimant's subjective complaints the reviewing

6  court must uphold the ALJ's conclusions even if the evidence is susceptible to more than one

7  rational interpretation. *Morgan v. Comm'r of Soc. Sec. Admin*., 169 F.3d 595, 599 (9th Cir.

8  1999).

9  The ALJ gave three reasons for rejecting Plaintiff's testimony regarding her symptoms

10  and limitations. AR. 20-21. First, the Commissioner concurs that the ALJ erred in finding that

11  Plaintiff's activities of daily living were inconsistent with the degree of impairment she alleged.

12  Dkt. 9 at 5. But, the Commissioner asserts the "ALJ's faulty evaluation of Plaintiff's activity

13  reports was harmless due to the other valid and independent reasons the ALJ gave." Dkt. 9 at 5

14  (citing AR 20-21; *see Carmickle v. Comm'r, Soc. Sec. Admin*., 533 F.3d 1155, 1162-63 (9th Cir.

15  2008) (concluding that errors in two reasons for rejecting symptom allegations were harmless

16  because the ALJ gave two other valid reasons)). As discussed below, the Court does not find this

17  error was harmless because the ALJ's other reasons for rejecting Plaintiff's subjective reporting

18  were not clear and convincing, either.

19  The second reason—that "the medical evidence of record fails to document significant

20  objective findings or treatment that would support limitations greater than those provided in the

21  residual functional capacity above"—is as Plaintiff argues, out of sequence. Dkt. 8 at 12 (citing

22  *Laborin v. Berryhill*, 867 F.3d 1151, 1153-54 (9th Cir. 2017)("By discrediting a claimant's

23  statements concerning the intensity, persistence and limiting effects of the claimant's symptoms

24

1   to the extent they are inconsistent with the RFC, the ALJ puts the cart before the horse.)).

2   Further, even if the ALJ had sequenced the analysis properly as the Commissioner argues, the

3   ALJ erred in his evaluation of the medical evidence.

4          The ALJ found that during the relevant period Plaintiff primarily sought treatment from a

5   chiropractor who manipulated her spine and iced her back (AR 528-533), a naturopath who also

6   manipulated her spine, helped her stretch, and gave her massages (AR 490-506), and an

7   orthopedist who periodically injected "trigger-points" in her back and neck with lidocaine, which

8   provided temporary relief for neck pain and headaches (AR 381-406, 460-483, 538-562 ). AR

9   20-21. Plaintiff's chiropractor and naturopath did not conduct any objective medical testing; they

10  simply credited her subjective reports. *Id*. (citing AR 528-533, AR 490-506). The ALJ also found

11  that Plaintiff's primary care provider prescribed pharmacological treatment, but also failed to

12  conduct any objective medical testing of record. AR 21-22 (citing AR 486-489, AR 510-526).

13         Although Plaintiff alleged in her disability application (AR 268) that she could not sit or

14  stand for prolonged periods due to debilitating pain, the ALJ found that Plaintiff generally

15  presented in no acute distress at her medical appointments. AR 386 ("no apparent distress"), 389

16  (same), 392 (same), 394-95 (same), 397 (same), 400 (same), 402 (same). Plaintiff had some

17  tenderness when examined, but without swelling, limited range of motion, or other abnormalities

18  in her cervical spine. AR 20. Examination findings of no acute distress may be relied upon by the

19  ALJ when evaluating allegations of debilitating pain. *See Rollins v. Massanari*, 261 F.3d 853,

20  856 (9th Cir. 2001); *Datillo v. Berryhill*, 773 F.App'x. 878, 881 (9th Cir. 2019)(unpublished).

21         The ALJ concluded his review of the objective medical evidence by stating a third reason

22  for not finding her subjective statements credible: "The claimant also reported good relief of her

23  headaches with botulinum toxin treatments, but insurance did not cover them, so she was unable

24

1  to continue the treatments after she stopped working (2F/5, 3F/23, 11F/12)." AR 20. The Court

2  shares Plaintiff's concern regarding this statement because although the Court does not interpret

3  it to mean that Plaintiff would "not be disabled if she just got Botox treatment" as Plaintiff

4  suggests (Dkt. 8 at 13), it is unclear what the ALJ meant by it. The Commissioner suggests this

5  statement means that Botox injections were part of Plaintiff's history of successful treatment that

6  allowed Plaintiff to work despite her chronic conditions, as it follows the ALJ's discussion of

7  Plaintiffs more current trigger-point injection routine.[1] Dkt. 9 at 6-7. Yet the ALJ did not actually

8  make this connection, nor did the ALJ comment upon the role Plaintiff's trigger-point injections

9  played in his determination that her subjective complaints were not fully credible. AR 20.

10  Moreover, the failure to receive treatment not covered by medical insurance cannot support an

11  adverse credibility finding. *See Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995) (Disability

12  benefits may not be denied because of a claimant's failure to obtain treatment he cannot obtain

13  for lack of funds).

14      In sum, this Court finds the ALJ failed to provide clear and convincing reasons for

15  discounting Plaintiff's statements about the intensity, persistence, and limiting effects of her

16  medical conditions. On remand the ALJ must reassess Plaintiff's subjective symptom testimony.

17  II.    The ALJ properly rejected one of the two medical source opinions Plaintiff presented.

18      In this case, the ALJ deferred to the assessments performed by two state agency medical

19  consultants, along with his own assessment of the record, and rejected the "opinions" provided

20

21  _____

22      [1] The Commissioner identified numerous records showing Plaintiff's lidocaine trigger-point injection
    appointments were typically separated by two or more months, and offered temporary relief. Dkt. 9 at 4 (citing AR
23  397 (Feb. 2018), 395 (June 2018), 392 (Sept. 2018), 389 (Dec. 2018), 386 (Feb. 2019), 383 (Apr. 2019), 420 (June
    2019), 562 (Oct. 2019), 556 (Nov. 2019), 550 (Feb. 2020), 547 (June 2020), 544 (Aug. 2020), 541 (Oct. 2020), 538
    (Jan. 2021)).

24

by the two medical sources Plaintiff submitted in support of her application. Due to the ALJ's

synchronous assessment of these sources the Court discusses them concurrently.

     a.  <u>Chiropractor Craig Cheple</u>

     In a letter dated April 26, 2019, Chiropractor Craig Cheple (Cheple) indicated he had

been treating Plaintiff for headaches since 2006. AR 407. His letter states, in full:

> Ms. Norrell has been treating in this office **since January 21, 2006**. Throughout that time, her main subjective complaint has been **headaches**.

> In November of 2014, she was involved in a car accident. Headaches were still her number one complaint, however worsened.

> Currently, when she comes in for care, her headaches are at a point when she can no longer stand the pain. Her **energy is minimal**. She's in tears. Her cervical spine and upper thoracic musculature is in **spasms**. Her vision is **blurred**.

> **She lives with headaches on a daily basis.**

> Her work suffers. **She has informed me on several occasions** that she physically just couldn't function and perform as she should as a photographer.

> Often, just **hauling her gear will be the onset of a severe headache**.

> I have been able to help her with these headaches; however **the relief she receives is temporary.**

> This problem is a chronic, ongoing and a debilitating situation.

> I trust that this brief note will give you some insight as to her condition[.]

> Should you require or need further input, do not hesitate to contact me.

AR 407 (emphasis added).

     b.  <u>Physician's Assistant Jamie Nixon</u>

     Physician's Assistant Jamie Nixon (Nixon) was Plaintiff's primary care provider during

the relevant period. In August 2019 she completed a "Fibromyalgia Residual Functional

Questionnaire" in which she indicted that Plaintiff meets the "American Rheumatological criteria

ORDER REVERSING AND REMANDING FOR
FURTHER PROCEEDINGS - 7

1  for Fibromyalgia" and also suffers from "cervica-occipital neuralgia" and "migraine". AR 455.

2  Nixon stated that her opinion was based upon "x-rays cervical spine, sacrum, coccyx" and

3  "frequent consultations w/ ortho with injections in neck." AR 455.

4       Nixon checked boxes indicating Plaintiff's pain was "frequently" "sufficiently severe to

5  interfere with attention and concentration" and would cause "marked" interference with "work

6  stress". AR 456. Nixon estimated that Plaintiff could walk about two city blocks before

7  experiencing severe pain or needing to rest, and that she could sit for less than two hours and

8  stand/walk for less than two hours, that she would "sometimes need to lie down at unpredictable

9  intervals during a work shift" and that she "cannot work an 8 hour day". AR 457. Finally, Nixon

10 checked a box indicating that she anticipates Plaintiff's "impairments and treatment(s) would

11 cause [her] to be absent from work" more than four times per month. AR 458.

12      c.  The ALJ's findings

13      The ALJ found Nixon and Cheple's statements to be unpersuasive because they were

14           … **inconsistent** with the **objective medical evidence** and the **claimant's**
15           **demonstrated** functioning and [were] **largely unsupported by treatment notes**, **exam findings, and other objective evidence.**

16 AR 22 (emphasis added). The ALJ further determined that Cheple's statement was unhelpful

17 because it was not a function-by-function analysis and because it relied on Plaintiff's "subjective

18 statements, not objective evidence, as support." *Id*. Finally, the ALJ found that Nixon "provided

19 no objective facts to support her highly restrictive check-box opinions." *Id*.

20      d.  Analysis

21      According to Plaintiff, the ALJ's rejection of these two opinions is patently wrong as the

22 medical records "actually support [a finding of] significant and disabling pain". Dkt. 8 at 5.

23 Moreover, Plaintiff insists the ALJ applied "an incorrect legal standard" to his assessment of

24

1   Cheple and Nixon's opinions by requiring "the medical opinions be consistent with 'objective

2   medical evidence'". Dkt. 8 at 4, 7.

3        A medical source "opinion" is a medical source's statement about a claimant's ability to

4   perform specific work activities or tolerate environmental conditions. 20 C.F.R. §

5   404.1513(a)(2). The ALJ evaluates medical source opinions based on supportability, consistency,

6   relationship with the claimant, specialization, and other factors. 20 C.F.R. §§ 404.1520c(c);

7   416.920c(c). The most important factors are supportability and consistency. 20 C.F.R. §§

8   404.1520c(a), (b)(2); 416.920c(a), (b)(2). The supportability factor requires the ALJ to consider

9   the relevance of the objective medical evidence and the supporting explanations presented by the

10   medical source to justify their opinion. 20 C.F.R. § 416.920c(c)(1). Inversely, consistency

11   involves a consideration of how consistent a medical opinion is with the other record evidence.

12   20 C.F.R. § 416.920c(c)(2).

13        A plain reading of his letter reveals that Cheple did not provide any assessment of

14   Plaintiff's work abilities or limitations, and therefore the ALJ was correct that Cheple's letter did

15   not constitute a medical opinion. AR 21-22, 407. Cheple's letter also speaks for itself insofar as

16   every statement is based upon Plaintiff's subjective reporting with the only arguably objective

17   finding being that Plaintiff sometimes appears in his office "tearful". AR 407. Thus, even if

18   Cheple's letter could be read as a "medical opinion", is was not supported by objective medical

19   evidence as required under 20 C.F.R. § 416.920c(c)(1).

20        Plaintiff contends the "ALJ [failed to make] even a minimal attempt to request the

21   detailed function-by-function analysis that he allegedly needs in order to believe Dr. Cheple."

22   Dkt. 8 at 9. However, this Court concurs with the Commissioner that because the ALJ did not

23   feel it necessary to obtain further information from Cheple in order to reach a conclusion about

24

1  whether Plaintiff was disabled, his duty to further develop the record was not triggered. 20

2  C.F.R. § 404.1520b(b)(2). Nevertheless, on remand, the ALJ may choose to schedule a

3  consultative evaluation in this case if he/she "cannot reach a conclusion" about whether a

4  Plaintiff is disabled without it. 20 C.F.R. § 404.1520b(b)(2).

5      As for Nixon, the Court concurs with the ALJ's determination that Nixon fails to point to

6  objective medical evidence, including treatment notes, exam findings, or other objective

7  evidence,[2] to support her opinion that fibromyalgia caused Plaintiff extreme work-related

8  limitations. AR 22. This failure renders Nixon's opinion unsupported, in contravention of 20

9  C.F.R. § 416.920c(c)(1). However, whether Nixon's opinion is also inconsistent with the record

10  is unclear as the ALJ did not explain the ALJ's reference to Nixon's opinion being at odds with

11  "demonstrated functioning". AR 22. Was the ALJ referring to Plaintiff's activities of daily

12  living? Or perhaps her performance during medical examinations? In any event, the ALJ did not

13  provide sufficient analysis to support the ALJ's conclusion that Nixon's opinion is inconsistent

14  with other record evidence, pursuant to 20 C.F.R. § 416.920c(c)(2).

15      In sum, this Court finds the ALJ's assessment of Cheple was supported by substantial

16  evidence, however the ALJ's assessment of Nixon needs further development following the

17  ALJ's reevaluation of Plaintiff's subjective testimony.

18  ///

19  ///

20

21

22      [2] The only imaging included indicates Plaintiff refused an MRI of the spine because she "has a phobia of
   MRI machines" but x-rays of her spine showed she was "stable radio graphically [sic] as well as clinically". *See* AR

23  451. Nixon states that her opined fibromyalgia-based limitations are based upon this evidence. AR 455. The only
   other "clinical findings" Nixon references are Plaintiff's regular cervical muscle trigger point injections from
   Dominic Femiano, M.D. (Femiano). AR 455. Yet Femiano's notes do not contain any objective medical testing. *See*

24  AR 536-566.

ORDER REVERSING AND REMANDING FOR
FURTHER PROCEEDINGS - 10

1     III.    <u>The ALJ's errors were not harmless.</u>

As discussed, above, the Commissioner concurs with Plaintiff that the ALJ erred in finding that her activities of daily living were inconsistent with the degree of impairment she alleged, but asserts this error was harmless. Dkt. 9 at 5. Plaintiff argues this error was not harmless. Dkt. 10 at 7.

Harmless error principles apply in the Social Security context. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless, however, only if it is not prejudicial to the claimant or is "inconsequential" to the ALJ's "ultimate nondisability determination." *Stout v. Commissioner*, Social Security Admin., 454 F.3d 1050, 1055 (9th Cir. 2006); *Molina*, 674 F.3d at 1115. The determination as to whether an error is harmless requires a "case-specific application of judgment" by the reviewing court, based on an examination of the record made "'without regard to errors' that do not affect the parties' 'substantial rights.'" *Molina*, 674 F.3d at 1118–1119 (quoting *Shinseki v. Sanders*, 556 U.S. 396, 407 (2009) (quoting 28 U.S.C. §2111)). In this case, the Court finds the ALJ's citation to Plaintiff's activities of daily living without further explanation was, in fact, harmless because the ALJ's other reasons for rejecting Plaintiff's subjective reporting were not clear and convincing, either. In addition, the Court also finds that the ALJ failed to articulate why medical provider Nixon's opinion was inconsistent with the longitudinal record. Had the ALJ credited Plaintiff's subjective symptom testimony as well as Nixon's medical opinion, the ultimately disability determination in this case may have been different. Accordingly, the Court finds these errors were not harmless, and therefore require reversal.

///

///

1

<u>CONCLUSION</u>

2

       For the foregoing reasons the Commissioner's final decision is REVERSED and

3

REMANDED for further proceedings consistent with this order.

4

       Dated this 4th day of November, 2022.

5

6

                       David W. Christel

7

                       United States Magistrate Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24